IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

**MILLER BOAT LINE, INC.**            CASE NO. 3:22 CV 1108

    Plaintiff,

    v.                                      JUDGE JAMES R. KNEPP II

**ELLIOTT BAY DESIGN GROUP, LLC,**

    Defendant.                      **MEMORANDUM OPINION AND ORDER**

## INTRODUCTION

The matter now before the Court is Third-Party Defendant Fraser Shipyards, LLC's ("Fraser") Motion to Dismiss Defendant Elliott Bay Design Group, LLC's ("Elliott Bay") Third-Party Complaint for indemnification and defense. (Doc 19). Elliott Bay opposed (Doc. 27), and Fraser replied (Doc. 28). Jurisdiction is proper under 28 U.S.C. § 1332.

For the reasons discussed below, the motion is denied.

## BACKGROUND

Plaintiff Miller Boat Line, Inc. ("Miller"), initiated this action against Elliott Bay for alleged defects in architectural, construction, and marine engineering services provided in relation to a new 140-foot-long ferry boat (the "vessel"). (Doc. 1, at ¶ 4). Miller entered an agreement with Elliott Bay for architectural and engineering services on November 1, 2017. (Third-Party Complaint, at ¶ 6)[1]. Miller agreed to extend Elliott Bay's services on July 6, 2018. *Id.* at ¶ 7. Miller and Fraser entered a construction contract on August 6, 2018. *Id.* at ¶ 8. Elliott Bay and Fraser entered an agreement for "Subcontractor Services" wherein Elliott Bay agreed to

---

1. Elliott Bay's Third-Party Complaint is located at ECF Doc. 16.

provide engineering, design, and regulatory liaison services to Fraser during construction of the vessel on September 5, 2018. *Id.* at ¶ 9. Elliott Bay and Fraser entered an "Agreement to Indemnify and Hold Harmless" on October 24, 2018. *Id.* at ¶ 10.

The indemnity agreement states Fraser agreed to indemnify and hold Elliott Bay harmless "from any liability, expense, claim or cause of action . . . arising out of the use of the information." *Id.* at ¶ 11. The agreement defines "information" as any "drawings, sketches, calculations and/or data used by [Elliott Bay] in the development of the database, as well as final drawings and information pursuant to an Agreement dated July 6, 2018 . . . which information was used by Fraser Shipyards, Inc. in the construction of the vessel."[2]

Elliott Bay filed a Third-Party Complaint which seeks indemnity from Fraser for any damages related to defects in the vessel recovered in the underlying action brought by Miller.

### STANDARD OF REVIEW

On a motion to dismiss under Federal Civil Rule 12(b)(6), the Court tests the complaint's legal sufficiency. The Court construes the complaint in the light most favorable to plaintiffs, accepts all factual allegations as true, and determines whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Although a complaint need not contain "detailed factual allegations," it requires more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Id.* at 555. The complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

---

2. Third-Party Defendant Fraser Shipyards, LLC, was formerly known as Fraser Shipyards, Inc. (Third-Party Complaint, at ¶ 2).

**DISCUSSION**

Elliott Bay brings a single claim against Fraser for indemnity and defense. (Third-Party Complaint at, ¶ 24-27). Fraser moves to dismiss on the grounds that a party may not be indemnified for its own negligence and wrongful conduct under the applicable state anti-indemnification statute. (Doc. 19, at 9). For the following reasons, Fraser's motion is denied.

Choice of Law

Fraser initially argued its agreement with Elliott Bay included a choice of law clause selecting the laws of the State of Washington to govern the agreement. (Doc. 19, at 5-6). Fraser argued that under Washington Revised Code § 4.24.115, "an agreement . . . purporting to indemnify against liability for damages caused by the sole negligence of the indemnitee is against public policy and is void and unenforceable." *Id.* at 6-7. Fraser argued in the alternative that if the contract was governed by Ohio law it would be entitled to dismissal because Ohio has a nearly identical statute. *Id.* at 8-9. Finally, Fraser stated maritime law does not apply to contracts regarding the construction of a boat. *Id.* at 9.

Elliott Bay contends Ohio law applies because the indemnity agreement does not contain a Washington choice of law clause. (Doc. 27, at 5-6).

Fraser ultimately agrees in reply that "for purposes of analysis of this motion at this stage of the proceedings[,] Washington law does not apply", and "[t]his leaves Ohio as the only choice of law for the Indemnity Agreement because the Indemnity Agreement contains no choice of law provision." (Doc. 28, at 4).

Therefore, the Court applies Ohio law.

Ohio's Anti-Indemnification Statute

The parties agree that, for purposes of Miller's negligence claim against Elliott Bay, the viability of Elliott Bay's indemnity claim hinges on whether Ohio Revised Code § 2305.31 applies to vessel construction contracts. *See* Doc. 27, at 7; Doc. 28, at 4. However, Elliott Bay contends that even if § 2305.31 applies to vessel construction contracts, the statute only prohibits indemnification for claims of negligence, so it is still entitled to indemnification for Miller's claims of breach of contract, breach of express warranty, and breach of implied warranty. (Doc. 27, at 13). Fraser disagrees and asserts § 2305.31 acts to void the indemnity agreement in its entirety, not just to Miller's claim of negligence. (Doc. 28, at 9-11).

Section 2305.31 states:

A covenant, promise, agreement, or understanding in, or in connection with or collateral to, a contract or agreement relative to the design, planning, construction, alteration, repair, or maintenance of a building, structure, highway, road, appurtenance, and appliance, including moving, demolition, and excavating connected therewith, pursuant to which contract or agreement the promisee, or its independent contractors, agents or employees has hired the promisor to perform work, purporting to indemnify the promisee, its independent contractors, agents, employees, or indemnities against liability for damages arising out of bodily injury to persons or damage to property initiated or proximately caused by or resulting from the negligence of the promisee, its independent contractors, agents, employees, or indemnities is against public policy and is void. Nothing in this section shall prohibit any person from purchasing insurance from an insurance company authorized to do business in the state of Ohio for his own protection or from purchasing a construction bond.

*Id*. The threshold question is whether an agreement concerning the design and construction of the 140-foot-long vessel is "a contract or agreement relative to the design, planning, construction, alteration, repair, or maintenance of a building, structure, highway, road, appurtenance, and appliance, including moving, demolition, and excavating connected therewith." *Id*.

The Third-Party Complaint clearly alleges the agreement contemplates "design, planning, construction, alteration, repair, or maintenance". *See* Third-Party Complaint, at ¶ 9. The point of

4

contention here relates to the second prong, that is, whether the vessel is a "building, structure, highway, road, appurtenance, [or] appliance[]". § 2305.31.

Elliott Bay relies on the Ohio appellate court case *Lamb v. Armco* for the proposition that "the statute's subject matter is confined to naturally and ordinarily stationary objects." 518 N.E.2d 53, 55 (Ohio Ct. App. 1986). In *Lamb*, the court held "a semi-trailer is not an 'appliance' as that term is used in R.C. 2305.31" because "appliance" should be "interpreted to mean an accessory, fixture or attachment to real estate" and that "[o]bviously, a semi-trailer does not fall within this definition." *Id.* at 56. *Lamb* also reviewed Ohio case law and observed "the normally immobile nature of the statute's subject matter". *Id. Lamb* recognized the following limitations with regard to the scope of § 2305.31:

> In examining R.C. 2305.31, we are impressed by the terms the General Assembly has chosen to place with the word "appliance" – "building, structure, highway, road, appurtenance, and appliance, including moving, demolition, and excavating connected therewith." To even the unsophisticated reader these words strongly suggest a close association with, if not actual annexation to, real estate. At the very least, *each of the words suggests the statute's subject matter is confined to naturally and ordinarily stationary objects.*

*Id.* at 55 (emphasis added).

Fraser rebuts that Ohio courts "take a broad approach in determining the applicability of § 2305.31" and that "[c]ase law in Ohio shows that courts have gone out of their way to find R.C. 2305.31 applicable in situations where it was questionable." (Doc. 28, at 5-6). Fraser argues "Ohio courts do not inquire as to whether the contract pertains to real estate. Rather, the courts determine if the contract falls within a wide variety of land-based, general construction projects." *Id.* at 5.

The Court disagrees. Fraser's assertion that Ohio courts apply § 2305.31 to a wide variety of land-based general construction projects is at odds with the statutory language and would

5

render the second prong, that is – "of a building, structure, highway, road, appurtenance, and appliance, including moving, demolition, and excavating connected therewith" – meaningless. *Roger Miller Music, Inc. v. Sony/ATV Publ'g, LLC*, 672 F.3d 434, 440 (6th Cir. 2012) ("In accordance with the rules of statutory construction, . . . we must give effect to each word and do not interpret a statute in a way that renders a provision meaningless or superfluous.") (cleaned up). Therefore, the vessel must fall within the listed subject matter categories to be covered by the statute.

Of the listed categories, Fraser argues the vessel is a "structure" and that the definition of structure does not provide a connotation of attachment to real estate. (Doc. 28, at 7). Fraser expressly acknowledges the vessel is not an appliance under the statute. *Id.* at 5. Fraser contends the reasoning set forth in *Lamb* (that § 2305.31 is limited to ordinarily stationary objects in close association to real estate) is limited to the definition of "appliances" and nothing more. *Id.* at 4. But a fair reading of *Lamb* shows otherwise; *Lamb* held that all the subject matter categories suggest a close association with real estate. 518 N.E.2d at 55. Furthermore, none of the case law provided by Fraser supports its position that § 2305.31 extends to property detached from real property. *Waddell v. LTV Steel Co.*, 706 N.E.2d 363, 367 (Ohio Ct. App. 1997) ("the kiln . . . purportedly measuring 250 feet in length, is obviously an 'appliance' under the *Lamb* definition since it is a fixture or attachment to the LTV plant."); *Davis v. LTV Steel Co.*, 716 N.E.2d 766, 770 (Ohio Ct. App. 1998) (§ 2305.31 was applicable where employees were "cleaning the tar sump pumps and vacuuming the tar pit" at an LTV coke plant); *C.J. Mahan Constr. Co. v. Mohawk Re-Bar Servs.*, 2005 Ohio App. LEXIS 4907, *10 (Ohio Ct. App.) ("bridgework involved in the case . . . connected Route 62 and Interstate 77; therefore the project pertained to a highway or road within the meaning of R.C. 2305.31.").

Fraser's comparison to the "temporary grate" in *J&L Specialty Steel v. Hammond Construction, Inc.* is unavailing, as the project at hand was the construction of a sump pump containment area at J&L's facility, which qualified as maintenance and construction on real property for purposes of § 2305.31. 1997 Ohio App. LEXIS 3900, *8 (Ohio Ct. App. 1995). And finally, reliance on the Supreme Court's rationale in *Lozman v. City of Riviera Beach* is ineffectual, as *Lozman* held that a houseboat does not fall within the statutory term "vessel" because a floating craft is not a "vessel" "unless a reasonable observer, looking to the home's physical characteristics and activities, would consider it designed to a practical degree for carrying people or things over water." 568 U.S. 115, 121 (2013). That the Supreme Court referred to a houseboat as a structure – in a context unrelated to § 2305.31 – does not support Fraser's assertion that the word "structure" for purposes of that statute encompasses transportation vessels like ferry boats.

This Court agrees with *Lamb* that the "statute's subject matter is confined to naturally and ordinarily stationary objects", and that moveable property – such as planes, semi-trailers, vehicles, or boats – are not "structures" under § 2305.31. *Lamb*, 518 N.E.2d at 55. Accordingly, § 2305.31 does not apply to the vessel construction contract and does not void the indemnity agreement as to any of Miller's claims. Fraser's Motion to Dismiss (Doc. 19) is therefore denied.

### CONCLUSION

For the foregoing reasons, good cause appearing, it is

ORDERED that Third-Party Defendant Fraser Shipyards, LLC's Motion to Dismiss the Third-Party Complaint (Doc. 19) be, and the same hereby is, DENIED.

      s/ *James R. Knepp II*
      UNITED STATES DISTRICT JUDGE